# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| FAITH WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-3329-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| STOBA USA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on United States Magistrate Judge Kaymani D.
West's report and recommendation ("R&R") that the court deny defendant Stoba USA
Corporation's ("Stoba") motion for partial dismissal. For the reasons set forth below, the
court adopts the R&R and denies Stoba's motion without prejudice. The court instructs
the plaintiff to amend her complaint as explained below within 14 days of this order.

## I.  BACKGROUND

Plaintiff Faith Woods ("Woods") brought claims against Stoba for gender
discrimination, retaliation, and hostile work environment in violation of Title VII of the
Civil Rights Act of 1964 ("Title VII") and wrongful discharge in violation of South
Carolina public policy. The court finds that the R&R ably recites the facts of this case as
alleged by the complaint. In short, Woods began working for Stoba in May 2017.
During her employment, she alleges that Otto Stadler ("Stadler"), who appears to have
been her former supervisor, instructed her to change the paperwork for a shipment of
valve sleeves to reflect that the sleeves were made in the United States instead of in
Germany. Woods refused to do so and complained to Stoba that doing so would violate
the law and subject her to criminal liability. Woods also alleges that Stadler instructed

Woods to fire another female employee despite the employee's good job performance. Woods alleges that she protested because the only reason Stadler wanted the employee to be fired was because she was female, but Stadler still instructed Woods to fire the employee. Woods then alleges that after she made her complaints, she was written up for a "no call, no show" on a day on which she worked and was paid for, and that she was subsequently fired for the "no call, no show" and poor job performance. Woods alleges that she did not have poor job performance and that several white males have been written up for "no call, no show" and were never fired.

Woods filed her complaint on December 11, 2018. Stoba then filed a motion for partial dismissal on January 4, 2019, seeking to dismiss Stoba's claim for wrongful discharge in violation of public policy ("WDPP"). ECF No. 7. Woods responded on January 18, 2019, ECF No. 12, and Stoba replied on January 24, 2019, ECF No. 13. On March 25, 2019, the magistrate judge issued an R&R, recommending that the court deny Stoba's motion. ECF No. 23. Stoba filed objection to the R&R on April 5, 2019, ECF No. 24, to which Woods replied on May 3, 2019, ECF No. 29. The matter is now ripe for the court's review.

## II.  STANDARDS

### A.  R&R

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the

magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

## B. Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

3

### III.  DISCUSSION

Stoba makes two primary objections to the R&R.  First, Stoba argues that the

R&R erred in declining to find that Woods's WDPP claim is based on an internal report

and should therefore be dismissed.  Next, Stoba contends that the R&R erred in finding

that a plaintiff pleading a WDPP claim is not required to plead the specific source of a

clear mandate of public policy.  The court considers each in turn.

#### A.  WDPP Claim Based on Internal Report

Stoba first argues that the R&R erred by not recommending dismissal of Woods's

WDPP claim because the claim is based on Woods's allegation that she was fired as a

result of her internal report to Stoba, which is not recognized as a basis for a WDPP

claim.  In South Carolina, "[a]n at-will employee may be terminated at any time for any

reason or for no reason, with or without cause." Mathis v. Brown & Brown of S.C., Inc.,

698 S.E.2d 773, 778 (S.C. 2010).  However, the Supreme Court of South Carolina

created a public-policy exception to this rule. Ludwick v. This Minute of Carolina, Inc.,

337 S.E.2d 213, 216 (S.C. 1985).  The court held that "a cause of action in tort for

wrongful discharge arises" when "retaliatory discharge of an at-will employee constitutes

violation of a clear mandate of public policy." Id.  The court further held that this public-

policy exception "is invoked when an employer requires an at-will employee, as a

condition of retaining employment, to violate the law." Id.

Since this exception was created, "[c]ourts have invoked the public policy

exception in two instances: (1) where an employer requires an employee, as a condition

of continued employment, to break the law, and (2) where an employer's termination is

itself illegal." Taghivand v. Rite Aid Corp., 768 S.E.2d 385, 387 (S.C. 2015) (citations

omitted). While the public-policy exception is not limited to these two situations, South Carolina courts have specifically not recognized any other situations to which the exception applies. Id. Here, Stoba argues that Woods's claim is that she was fired for internally reporting alleged illegal behavior, which does not fall within either of the two recognized instances of a WDPP claim. The R&R agrees there are "numerous cases . . . finding no public-policy exception exists for internal reporting when an employee makes an internal report concerning wrongdoing the employee believes to be illegal under various laws." ECF No. 23 at 10. However, the R&R found that Woods's WDPP claim is not based on her internal report but on the fact that she was required by Stoba to violate the law.

Stoba disagrees with this finding and contends that Woods alleges that she was terminated for <u>reporting</u> that she was asked to violate the law, not that she was terminated for <u>refusing</u> to violate the law. In order to determine exactly what Woods alleges, the court turns to her complaint. Woods first alleges that FTC regulations and tax laws make it illegal to mislabel a product's country of origin. Compl. ¶ 13. She then alleges that she was asked to change the paperwork on a shipment of valve sleeves to indicate that the sleeves were made in the United States when they were actually made in Germany, and that she refused to do so because it would violate the law. Id. ¶¶ 14–15. Finally, Woods alleges that her termination was in "retaliation for reporting the violation of the law." Id. ¶ 21. If these were the only allegations related to Woods's WDDP claim, then Stoba would be correct in arguing that Woods has only alleged that she was terminated for reporting the violation. However, in the section of her complaint alleging her WDPP cause of action, Woods alleges "[t]hat the unjust wrongful discharge and termination of

Plaintiff's employment with the Defendant were the response of the Defendant, its agents

and servants, to Plaintiff's refusal to allow improper and illegal practices of the business

due to <u>Defendant's disregard [sic] the proper transportation, storage and administration of</u>

<u>vaccinations pursuant to DHEC and CDC guidelines</u>." Id. ¶ 63 (emphasis added). This

is where Woods connects her factual allegations to allege that she was terminated for her

refusal to violate the law; however, she does so in relation to an unrelated topic. As the

R&R noted, this seems to be a mistake, as Woods's other allegations are about valve

sleeves, FTC regulations, and tax laws, not vaccinations and DHEC and CDC guidelines.

While the court certainly does not condone these types of apparently inadvertent

mistakes, this inconsistency does not warrant dismissal of Woods's WDPP claim. Woods

alleges the facts necessary to state her WDPP claim, namely that she was asked by her

employer to violate the law, she refused to do so, and she was terminated as a result. The

fact that Woods does not clearly allege that she was terminated because she refused to

violate the FTC regulations and tax laws is due to this drafting mistake. If the language

in ¶ 63 about vaccinations and the DHEC and CDC guidelines was replaced with the

relevant facts of this case related to valve sleeves, FTC regulations, and tax laws, then

Woods would allege a plausible WDPP claim. Woods should not be penalized for her

counsel's apparent failure to modify language that was likely taken from another

complaint but not properly edited to fit the facts of her case.[1] As such, the court instructs

---

[1] The court would suggest that Woods's lawyer proofread his pleadings before
filing them. If he had, this type of confusion might have been avoided.

Woods to amend her complaint to correct this mistake[2] within 14 days of this order.  If she fails to do so, Stoba may renew its motion to dismiss.

Stoba also argues that the R&R impermissibly relied on content from Woods's response in reaching her ruling.  The R&R noted that in Wood's response, Woods indicated that she brought her WDPP claim under the "criminal-law-public-policy exception."  ECF No. 23 at 10.  To be sure, "it is well-settled that a complaint cannot be amended by plaintiff's briefs in opposition to a motion to dismiss."  Sheppard v. LPA Grp., 2008 WL 444685, at *3 (D.S.C. Feb. 15, 2008).  However, Woods did not amend her complaint in her response.  Instead, she argued that she has sufficiently alleged her WDPP claim because she "has clearly stated that her employer required her to violate these laws as a condition of her employment."  ECF No. 12 at 6.  In support of this argument, she states that she alleges in ¶¶ 13–14 of her complaint that "Defendant asked Plaintiff to violate a number of regulations governed by The Federal Trade Commission (FTC) that deal with where products are made as well as tax laws that direct how a product will be taxed based on its country of origin" and that she alleges in ¶ 19 that she was terminated when she failed to do so.  Id.  This is not an example of Woods amending her complaint, as she is not altering anything within her complaint, nor is she adding new allegations.  Instead, she is citing to paragraphs within her complaint to support her argument.  And while the R&R does reference Woods's response as support for the fact that Woods brings her WDPP claim under the exception regarding an employer requiring its employee to violate the law, the fact that Woods is operating under that theory is also

---

[2] To be clear, counsel should not use this opportunity to cure any other deficiencies in the complaint or to add any allegations or causes of action.

apparent from the complaint itself.  See Compl. ¶¶ 62–66.  Therefore, the R&R did not

improperly rely on Woods's response.

### B.  Source of Public Policy[3]

Next, Stoba argues that the R&R erred by failing to dismiss Woods's WDPP

claim when Woods does not allege the specific law that she was allegedly required to

violate.  Stoba first contends that the R&R misstated the law when it said that a WDPP

claim involves an employee being required to violate a <u>criminal</u> law, as opposed to any

law.  Stoba then argues that the R&R improperly relied on this distinction when it found

that Woods did not need to specifically allege the law she was allegedly required to

violate.  Finally, Stoba argues that the "relaxed" pleading standard adopted by the R&R

contradicts the Federal Rules of Civil Procedure and is unfair to defendants.

### a.  Criminal Law Distinction

First, Stoba contends that the R&R improperly distinguishes between a WDPP

claim in which an employee was required to violate a criminal law and a claim in which

an employee was required to violate any other law.  In <u>Ludwick</u>, the case that created the

public-policy exception to the at-will employment doctrine, the court held "that the

public policy exception is invoked when an employer requires an at-will employee, as a

condition of retaining employment, to violate <u>the law</u>."  337 S.E.2d at 216 (emphasis

added).  The court did not specify that the exception could only be invoked with the

---

[3] In order to avoid a piecemeal review of the R&R, the court assumes for the
purposes of this section that Woods's counsel will correct his error in ¶ 63 of the
complaint to adequately allege a WDPP claim.  However, if Woods's counsel does not do
so within 14 days of this order and Stoba renews its motion to dismiss, the court notes
that this section of the order will no longer apply because Woods will have not
sufficiently alleged a WDPP claim.

violation of criminal law. Indeed, the Court of Appeals of South Carolina later clarified

that "[n]othing in . . . decisions by our supreme court hold the employer must require the

employee to violate a criminal law in order for the public policy exception to apply."

Donevant v. Town of Surfside Beach, 778 S.E.2d 320, 327 (S.C. Ct. App. 2015), aff'd,

811 S.E.2d 744 (S.C. 2018). Therefore, a WDPP claim may be established when an

employer requires its employee to violate any law, not just a criminal law. However, any

attention that the R&R drew to the law being criminal is immaterial for the reasons

discussed below.

### b. Sufficient Allegation of Specific Law

Stoba then argues that assuming Woods has adequately alleged a WDPP claim on

the basis of Stoba requiring Woods to violate the law, Woods has not sufficiently alleged

what law she was required to violate. Stoba contends that Woods must allege in her

complaint the specific law or laws that she was allegedly required to break. The R&R

found that such specificity is not required at this stage of litigation. The R&R opined that

Woods's "pleading of the exact criminal law or laws she would be violating if she

followed her supervisor's orders regarding the paperwork could be more precise," but

"[n]onetheless, at this juncture, [Woods] should be permitted to proceed and present

evidence to support her claim." ECF No. 23 at 7.

Stoba first argues that South Carolina courts have clearly and unequivocally

required WDPP plaintiffs to identify the specific source of public policy at issue to

survive a motion to dismiss. This general requirement is true; however, it applies in

cases in which a plaintiff is attempting to assert a new basis for a public-policy exception

in a WDPP claim, not in a case in which the plaintiff is asserting that she was required to

violate the law or that her termination was illegal. As discussed above, the public-policy exception has been applied in two situations: when a plaintiff alleges that she was required to violate the law as a condition of her employment, and when an employer's termination itself is illegal. Taghivand,768 S.E.2d at 387. Indeed, as Stoba argues, these two situations are the specific source of a clear mandate of public policy—an employer requiring an employee to break the law or an employer itself breaking the law. However, when a plaintiff seeks to create a new exception, the plaintiff must point to the specific source of public policy that warrants the exception, and when the plaintiff does not do so, courts will dismiss the claim. For example, in Fields v. Richland Cty. Sheriff's Dep't, the plaintiff did not argue that his employer required him to violate the law or that his termination was illegal. 2018 WL 4560538, at *8 (D.S.C. May 25, 2018), report and recommendation adopted, 2018 WL 4001830 (D.S.C. Aug. 22, 2018). Instead, he alleged that it is the public policy of South Carolina for employers to apply their internal policies uniformly to all of their employees, and that because he was terminated despite following his employer's internal policy, he should be able to pursue a WDPP claim. In other words, the plaintiff was attempting to create a new, third situation that falls within the public-policy exception. The plaintiff's WDPP claim was dismissed because he "point[ed] to no statute, constitutional protection, or judicial decision setting forth any 'clear mandate' of public policy violated when an employee is discharged despite following internal policies." Id.

In all of the cases that Stoba relies on for support that Woods is required to name the specific law she was required to violate, the plaintiff was attempting to assert a new and novel "clear mandate" of public policy, not one of the two established clear

10

mandates, i.e., requirement to violate the law or illegal termination.  See McNeil v. S.C.

Dep't of Corr., 743 S.E.2d 843, 847 (S.C. Ct. App. 2013) ("McNeil's complaint does not

contend SCDC demanded she violate a law or her termination violated any law.  Her

complaint also does not state sufficient facts from which a court could determine a

violation of any public policy.  McNeil merely alleges SCDC terminated her for personal,

political, pretextual, and scapegoating purposes"); Hobek v. Boeing Co., 2017 WL

9250342, at *5 (D.S.C. June 8, 2017), report and recommendation adopted, 2017 WL

3085856 (D.S.C. July 20, 2017) ("The Complaint does not allege that Boeing required

the Plaintiff to violate criminal law or that his termination was itself illegal."); Smith v.

Sam Carbis Sols. Grp., LLC, 2016 WL 11200718, at *5 (D.S.C. Nov. 15, 2016), report

and recommendation adopted, 2017 WL 874983 (D.S.C. Mar. 6, 2017) (dismissing the

plaintiff's WDPP claim because he did not allege that either of the two recognized

exceptions applied, and in attempting to assert a novel exception, he did not identify a

violation of public policy); Bell v. Nucor Corp., 2016 WL 4435678, at *4 (D.S.C. Aug.

19, 2016) (dismissing the plaintiff's WDPP claim because he did not allege that either of

the two recognized exceptions applied, and in attempting to assert a novel exception, he

did not identify a violation of public policy); Bouknight v. KW Assocs., LLC, 2016 WL

3344336, at *2 (D.S.C. June 16, 2016) (adopting the report and recommendation that

"recommends this [WDPP] claim be dismissed because it is not based on either of the

two previously recognized bases for a Wrongful Termination claim (where the employer

requires the employee to violate the law or the termination is, itself, a violation of

criminal law) or any other clear mandate of public policy."); Conner v. Nucor Corp.,

2015 WL 5785510, at *8 (D.S.C. Sept. 30, 2015) (dismissing the plaintiff's WDPP claim

because he does not allege either of the two recognized exceptions nor does he allege the specific public policy that was allegedly violated); Gray v. Am. Homepatient, Inc., 2015 WL 892780, at *3 (D.S.C. Mar. 3, 2015) (same); Novak v. Joye, Locklair & Powers, P.C., 2010 WL 10079883, at *1–2 (S.C. Ct. App. Apr. 1, 2010) (finding the plaintiff failed to sufficiently allege her WDPP claim because the plaintiff did not allege that she was required to violate the law or that her termination was illegal and instead relied on the South Carolina Rules of Professional Conduct as the "clear mandate of public policy"). In all of these cases, the specificity of the source of public policy was required because the plaintiff was attempting to assert a new public-policy exception.

Stoba argues the R&R's consideration of the above authority is where the R&R improperly distinguished between the violation of a criminal law and the violation of any law. The R&R stated that

> Indeed, while there are cases concerning whether expressions of public policy have been adequately pleaded at the 12(b)(6) stage, the parties have not cited, nor is the court aware of, controlling authority discussing the degree of specificity required for a plaintiff to survive a Rule 12 challenge in a Ludwick-type situation—that is, when the plaintiff claims she would be subjected to criminal prosecution if she had performed the act for which she allegedly was terminated.

ECF No. 28 at 8. Despite Stoba's objection, this is a proper distinction. As exampled above, all of the cases cited by Stoba involve plaintiffs who seek to bring new theories under the public-policy exception, not one of the two established exceptions. None of the cases involve what the R&R characterizes as a "Ludwick-type situation," which is a plaintiff alleging that her employer required her to violate the law. Like the R&R, the court is not aware of any controlling authority requiring a plaintiff who brings a WDPP

claim on the basis of being required to violate the law to specifically identify the law she

was required to violate.  The R&R further explained that

> The bulk of the cases, including those relied on by Defendant that found
> public policy had not been sufficiently demonstrated, concerned not
> whether an allegation concerning being asked to violate a <u>criminal</u> law was
> sufficiently pleaded but whether the plaintiff had sufficiently set forth the
> public policy on which she based her WDPP claim.

Id. (emphasis added by Stoba).  Stoba argues that this distinction is in error, but again, as

explained above, this distinction is correct.  And while an employee may allege that she

was required to violate any law, not just criminal, the R&R's characterization of the law

being criminal does not impact the basic distinction drawn in both the R&R and this

order.

Furthermore, Stoba argues that the R&R does not identify "what clear mandate of

public policy [it] believes [Woods] has alleged was violated by [Stoba]'s alleged acts."

ECF No. 24 at 13.  However, the R&R did so.  The R&R states that Woods has alleged a

cause of action under "the original 'public policy exception' found in <u>Ludwick</u>," which is

the exception that is created when an employer requires its employee to violate the law.

ECF No. 23 at 7.  The R&R explains that Woods has done so because she alleges that she

was instructed to change paperwork in violation of the law and references FTC

regulations and tax laws concerning tax fraud.  None of the cases cited by Stoba require a

plaintiff to specifically identify the law that her employer allegedly required her to

violate.  In sum, the R&R found that Woods alleged that the clear mandate of public

policy that Stoba violated was the first established public-policy exception: requiring

Woods to alter paperwork in violation of FTC regulations and tax laws.

### c. Standard of Pleading

Finally, Stoba argues that "the relaxed pleading requirement for WDPP claims

proposed by the Magistrate Judge could have devastating consequences for defendants

seeking to dismiss WDDP claims." ECF No. 21 at 14. Stoba contends that defendants

will not be on notice as to what source of clear public policy mandate is underlying the

plaintiffs' claims, and as a result, the defendants will be unable to plead an existing

alternative remedy defense. However, as discussed above, the R&R does not recommend

a "relaxed" pleading standard. The R&R found that Woods alleges that she was fired for

refusing to violate the law, as required by her employer, and South Carolina courts have

clearly held that an employer required its employee to violate the law is a clearly against

public policy. As discussed above, a plaintiff is not required to name the specific law that

she was required to violate. Moreover, by alleging that she was required to violate FTC

regulations and tax laws, which are generally described in ¶ 13 of the complaint, Stoba is

put on sufficient notice of which laws are at issue.

Moreover, the R&R does not create a situation in which an employee could "hide

the ball by refusing to identify the specific source of a clear public policy mandate

underlying his or her claim." ECF No. 24 at 14. To be sure, a WDPP plaintiff cannot

generally allege that her termination was in violation of a clear mandate of public policy.

As this court has previously explained, "any employee could circumvent the employment

at-will doctrine by merely asserting a termination was retaliatory in violation of a clear

mandate of public policy and contend it was a novel issue in this state." Desmarais, 145

F. Supp. 3d at 598 (emphasis added).  But here, Woods is not generally asserting that her termination was retaliatory in violation of a clear mandate of public policy, nor is she asserting a novel application of the public-policy exception.  Instead, she is asserting the recognized public-policy exception that she was terminated after being required to and refusing to violate the law.  And when a plaintiff asserts this exception, South Carolina courts have not required plaintiffs to name the specific law that the plaintiff alleges that she was required to violate.  Therefore, the R&R is not recommending any sort of relaxed pleading standard but instead is adhering to the established law of South Carolina.

## IV.  CONCLUSION

For the foregoing reasons the court adopts the R&R and denies Stoba's motion without prejudice.  The court instructs Woods to amend her complaint as explained above within 14 days of this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 14, 2019**
**Charleston, South Carolina**